## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| J.C., | : | **SEALED CASE** |
| Petitioner | : | |
| | : | |
| v. | : | |
| | : | |
| Department of Public Welfare, | : | No. 1698 C.D. 2014 |
| Respondent | : | |

| | | |
|---|---|---|
| J.C., | : | |
| Petitioner | : | |
| | : | |
| v. | : | |
| | : | |
| Department of Public Welfare, | : | No. 1944 C.D. 2014 |
| Respondent | : | |

| | | |
|---|---|---|
| J.C., | : | |
| Petitioner | : | |
| | : | |
| v. | : | |
| | : | |
| Department of Public Welfare, | : | No. 1945 C.D. 2014 |
| Respondent | : | |

| | | |
|---|---|---|
| J.C., | : | |
| Petitioner | : | |
| | : | |
| v. | : | |
| | : | |
| Department of Public Welfare, | : | No. 1946 C.D. 2014 |
| Respondent | : | |

| | | |
|---|---|---|
| J.C., | : | |
| Petitioner | : | |
| | : | |
| v. | : | |
| | : | |
| Department of Public Welfare, | : | No. 1947 C.D. 2014 |
| Respondent | : | |

J.C.,                                          :
                    Petitioner               :
                                             :
          v.                                 :
                                             :
Department of Public Welfare,                :     No. 1948 C.D. 2014
                    Respondent               :

J.C.,                                          :
                    Petitioner               :
                                             :
          v.                                 :
                                             :
Department of Public Welfare,                :     No. 1949 C.D. 2014
                    Respondent               :     Submitted: June 19, 2015


BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
          HONORABLE ROBERT SIMPSON, Judge
          HONORABLE ANNE E. COVEY, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                              FILED: March 9, 2016


          J.C., pro se, petitions for review of the Department of Public Welfare's

(DPW)[1] Bureau of Hearings and Appeals' (BHA) August 26, 2014 orders dismissing

his requests to expunge founded reports[2] from the ChildLine & Abuse Registry

---

[1] Effective November 24, 2014, DPW was officially renamed the Department of Human Services.  However, because this appeal was filed prior to the official name change, we will refer to Respondent as DPW herein.

[2] Section 6303(a) of the Child Protective Services Law (Law) defines "[f]ounded report," in pertinent part, as:

> A child abuse report involving a perpetrator that is made pursuant to this chapter, if any of the following applies:
>
> (1) There has been a judicial adjudication based on a finding that a child who is a subject of the report has been abused and the adjudication involves the same factual circumstances involved in the

(ChildLine Registry).[3] The issue for this Court's review essentially is whether DPW erred in dismissing J.C.'s appeals. After review, we affirm.

On August 18, 2003, the Philadelphia Department of Human Services Child Protective Service Agency (DHS) received a report that four young sisters – Ale. B. (age 10), Aly. B. (age 6), Pr. B. (age 4) and Po. B. (age 3) – had been physically abused by their caretakers, J.C. and his girlfriend C.G. The report stemmed from an investigation following Po. B.'s August 17, 2003 death. DHS investigated and, on September 2, 2003, issued DPW Child Protective Service Investigation Report form (CY-48) for the girls reflecting that physical abuse was indicated.[4] *See* Certified Record (C.R.) Item 2 at 3-4; *see also* DHS Br. Apps. A-1 – A-2.

---

> allegation of child abuse. The judicial adjudication may include any
> of the following:
>
> (i) The entry of a plea of guilty or nolo contendere.
>
> (ii) A finding of guilt to a criminal charge.

23 Pa.C.S. § 6303(a); *see also* 55 Pa. Code § 3490.4. Founded report information is placed in the Commonwealth's Childline & Abuse Registry. 23 Pa.C.S. §§ 6338(a), 6368(f)(5).

[3] ChildLine is defined as "[a]n organizational unit of [DPW] which operates a Statewide toll-free system for receiving reports of suspected child abuse established under [S]ection 6332 of the [Law] (relating to establishment of Statewide toll-free telephone number), refers the reports for investigation and maintains the reports in the appropriate file. . . ." 55 Pa. Code § 3490.4.

[4] Although the CY-48 included in the Certified Record names Aly. B. as the victim, the form records ChildLine Report Numbers for: Ale. B. at ChildLine Report No. 51-134156; Aly. B. at ChildLine Report No. 51-134159; Pr. B. at ChildLine Report No. 51-134160; and, Po. B. at ChildLine Report No. 51-135155. *See* Certified Record (C.R.) Item 2 at 3-4; *see also* DHS Br. App. A-1 – A-1.

Section 3490.67 of DPW's Regulations provides:

> (a) The county agency shall send the Child Protective Service Investigation Report form (CY-48) to ChildLine within 30-calendar days of the receipt of the report of suspected child abuse.
>
> (b) To avoid expunction of a case as required by § 3490.69 (relating to reports not received within 60-calendar days) when a status

On September 24, 2003, a report was made that J.C. and C.G. sexually abused the girls. DHS investigated and, on October 20, 2003, issued a CY-48 reflecting that sexual abuse of Ale. B., Aly. B. and Pr. B. was also indicated.[5] *See*

determination cannot be made and . . . an arrest has been made or there is criminal court action pending, the county agency shall send a copy of the CY-48 to ChildLine with one of the following status determinations:

(1) Pending juvenile court action.

(2) Pending criminal court action.

(3) Indicated, when there is substantial evidence that the child was abused.

(c) The county agency shall submit a new CY-48 to ChildLine as required in subsection (a) when a final status determination is made under subsection (b).

(d) A supplemental child abuse report form [CY-49] shall be submitted to ChildLine on founded and indicated reports when . . . the case is presented before a court and there is a change in the status of the report.

55 Pa. Code § 3490.67. The status of the CY-48 in this case was marked "[i]ndicated" pursuant to Section 3490.67(b)(3) of DPW's Regulations. C.R. Item 2 at 4; *see also* DHS Br. App. A-2.
    An "[i]ndicated report" is

a report of child abuse . . . if an investigation by [DPW] or county agency determines that substantial evidence of the alleged abuse by a perpetrator exists based on any of the following: (i) [a]vailable medical evidence[;] (ii) [t]he child protective service investigation[; or,] (iii) [a]n admission of the acts of abuse by the perpetrator.

23 Pa.C.S. § 6303(a) (emphasis omitted); *see also* 55 Pa. Code § 3490.4. Indicated report information is also placed on the Childline Registry. 23 Pa.C.S. §§ 6338(a), 6368(f)(5).
    [5] Although the CY-48 included in the record names Aly. B. as the victim, the form records Report Numbers for: Ale. B. at ChildLine Report No. 51-134636; Aly. B. at ChildLine Report No. 51-134635; and, Pr. B. at ChildLine Report No. 51-134637. *See* Supplemental Certified Record (Supp.C.R.) 58-59; *see also* DHS Br. App. A-3 – A-4. This CY-48 also had an "[i]ndicated" status under Section 3490.67(b)(3) of DPW's Regulations. *See* Supp.C.R. at 59; *see also* DHS Br. App. A-4.

Supplemental Certified Record (Supp.C.R.) at 58-59; *see also* DHS Br. Apps. A-3 - A-4.

On December 2, 2003, DHS sent a letter to J.C. informing him that an indicated report of child abuse had been placed on the ChildLine Registry, and that he was listed as the perpetrator of the abuse.[6] C.R. Item 2 at 6; *see also* DHS Br. App. A-5. The letter informed J.C. that he had the right, within 45 days, to request DPW's review of the findings against him.[7]

On May 20, 2005, a jury found J.C. guilty of first-degree murder (of Po. B.), conspiracy and aggravated assault, along with four counts of conspiracy to endanger the welfare of a child, four counts of child endangerment, three counts of indecent assault, three counts of indecent exposure, three counts of corrupting minors and possession of an instrument of crime. On May 26, 2005, J.C. was sentenced to death, plus 72 to 144 years in prison. With the assistance of counsel, J.C. appealed, and on September 30, 2009, the Supreme Court affirmed the verdict and sentence.[8] *See Commonwealth v.* [*J.C.*], 980 A.2d 35 (Pa. 2009), *cert. denied*, 560 U.S. 928 (2010); *see also* C.R. Item 2 at 30-31, 35-37.

Several years later, by November 21, 2012 "second notice," DPW informed J.C. that he was the named perpetrator in an indicated report of abuse placed on the ChildLine Registry, and that he had 45 days in which to either request

---

[6] The December 2, 2003 notice included in the record references Aly. B. relative to ChildLine Report No. 51-134159. We cannot determine based on this record whether a notice was sent for each of the seven report numbers, or whether the seven reports had been consolidated under Aly. B.'s ChildLine report number at that point in time.

[7] Section 6341(a)(2) of the Law requires that a perpetrator in an indicated report "request an administrative review by, or appeal and request a hearing before, the secretary to amend or expunge an indicated report on the grounds that it is inaccurate or it is being maintained in a manner inconsistent with this chapter." 23 Pa.C.S. § 6341(a)(2). An amendment to Section 6341(a)(2) of the Law effective December 31, 2014 has since extended the period to 90 days.

[8] According to the Supreme Court docket, a September 9, 2010 order stayed J.C.'s October 21, 2010 execution date.

review or a hearing.[9]  Supp.C.R. at 11-12.  On November 28, 2012, J.C. submitted an extensive written request to DPW that it review all seven 2003 indicated reports, stating:[10]

> I disagree because I am innocent and never did I abuse any of the children and I did not sexually abuse non [sic] of the girls, you only sent me one form for review and I was charge [sic] with four of the girls for abuse and sexual abuse, I added all the numbers, I would like to have all reviewed and also please find enclosed my Evidence Proving my innocence Newly Discovered Evidence (A) to (F) Civil Suit Against the news[]paper, and Exculpatory Evidence from (A) to (H).

C.R. Item 2 at 7; *see also* DHS Br. App. A-6.  In the narrative attached to J.C.'s review request, J.C. detailed how he disagreed with the reports, that Po. B. was not murdered[11] and, rather than abusing the girls, he cared for them to the degree that he made previous abuse reports against their mother, but which DHS failed to investigate.  *See* C.R. Item 2 at 8-92; *see also* DHS Br. Apps. A-7 – A-8.  Based upon the documents he attached to his review request, J.C. asked that his name be stricken from the ChildLine Registry.  *See* C.R. Item 2 at 9; *see also* DHS Br. App. A-8.  He further queried: "I also need clarification as to why there [are] no reports requesting

---

[9] The November 21, 2012 "second notice" included in the record references only Po. B.'s ChildLine Report No. 51-134155.  We cannot determine based on this record whether a similar "second notice" was sent for each of the seven ChildLine Registry report numbers.

The December 2, 2003 notice had been mailed to J.C. at a Philadelphia street address.  *See* C.R. Item 2 at 6; *see also* DHS Br. App. A-5.  It is not clear in this record precisely when J.C. was taken into custody.  J.C. did not request review or a hearing in 2003.  However, if J.C. was incarcerated by the time the notice was issued, it is possible that he did not receive the December 2, 2003 notice.

[10] "As a general rule, the Law provides that the Secretary of the DPW (Secretary) **may** amend or expunge any record at any time upon good cause shown and notice to the appropriate subjects of the report.  23 Pa.C.S. § 6341(a)(1)."  *G.M. v. Dep't of Pub. Welfare*, 954 A.2d 91, 93 (Pa. Cmwlth. 2008).

[11] J.C. contends that Po. B. died from a condition known as "[i]nanation," which is a form of exhaustion caused by malnutrition.  DHS Br. App. A-7.

5

review or a hearing for Ale[. B.], Al[y. B.] and Pr[. B.], there [are] investigation reports stating that I allegedly abuse[d] and sexually abuse[d] them, I need clarification of this." C.R. Item 2 at 9; *see also* DHS Br. App. A-8.

By letter issued January 30, 2013, DPW notified J.C. that it reviewed the 2003 investigations and stated: "We believe the report is accurate and being maintained in a manner consistent with the Child Protective Services Law [(Law)[12]]. Thus the report will remain on file as originally reported."[13] C.R. Item 2 at 12; *see also* DHS Br. App. A-11. The letter informed J.C. that he could request a BHA hearing.

By February 5, 2013 letter, J.C. requested a hearing as to all seven indicated reports. C.R. Item 2 at 13-14; *see also* DHS Br. Apps. A-12 – A-13. J.C. enclosed a copy of a petition to which he attached his nephew's affidavit (Affidavit) stating that DHS forced him to lie during its abuse investigations. J.C. averred that the Affidavit is newly-discovered evidence. On April 29, 2013, DPW ordered BHA to schedule a hearing. *See* C.R. Item 2 at 1-2.

On November 13, 2013, BHA issued a rule to DHS to show cause why J.C.'s appeals should not be scheduled for a hearing.[14] Therein, BHA noted: "On September 10, 2013, [DHS] reported that [J.C.'s] related criminal proceedings have concluded. [BHA] has not received a [Child Protective Service Supplemental Report form (CY-49)] from [DHS]. Absent a CY[-]49 being filed to amend the status of the

---

[12] 23 Pa.C.S. §§ 6301-6386.

[13] The only January 30, 2013 letter included in the record references Aly. B. relative to Report No. 51-0134159. We cannot determine based on this record whether a notice was sent for each of the seven report numbers, or whether the seven reports had been consolidated under Aly. B.'s report number.

[14] BHA Docket Nos. 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 (Aly. B. ChildLine Report No. 51-134159), 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 (Pr. B. ChildLine Report No. 51-134160), 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 (Po. B. ChildLine Report No. 51-135155), 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 (Ale. B. ChildLine Report No. 51-134156), 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 (Aly. B. ChildLine Report No. 51-134635), 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 (Ale. B. ChildLine Report No. 51-134636) and 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 (Pr. B. ChildLine Report No. 51-134637).

. . . reports to founded, the appeals must be scheduled for a hearing." DHS Br. App. A-14.

By November 20, 2013 "Letter of Application of Factual Evidence of Innocence," to BHA's administrative law judge (ALJ), J.C. claimed that DHS held back evidence and fabricated the child abuse charges against him, and that he had an action pending against the offending officials. Supp.C.R. at 34-37. On December 26, 2013, J.C. filed a declaration for entry of judgment with BHA seeking to have his abuse reports expunged due to DHS' failure to show cause why a hearing should not be scheduled. *See* Supp.C.R. at 45-47.

On April 2, 2014, J.C. again corresponded with BHA's ALJ regarding his counsel's failure to assist him, wherein he also requested a hearing date because DHS failed to show cause why a hearing should not be scheduled. On April 17, 2014, BHA issued an order scheduling a hearing for May 27, 2014 relative to all seven appeals.[15] Supp.C.R. at 18-20. The order required the parties to submit their pre-hearing filings by May 7, 2014.

Thereafter, J.C. claimed that he mailed documents in support of his case to BHA on May 7, 2014, but was notified by the United States Postal Service that the documents had been lost or damaged. He also contended that the envelope was opened and the contents intentionally removed so that the May 27, 2014 hearing would not take place. *See* J.C. Br. at 17, 19; *see also* Supp.C.R. at 22-24, 64.

On May 22, 2014, DHS filed a motion to dismiss J.C.'s appeals because the indicated reports and his criminal convictions were based upon the same factual circumstances, and J.C. cannot collaterally attack his criminal convictions by seeking to expunge the abuse reports from the ChildLine Registry.

---

[15] At this point, it is evident that DPW had consolidated all of the girls' ChildLine reports under Aly. B.'s case number BHA Docket No. 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 (which corresponds with Aly. B.'s ChildLine Report No. 51-134159).

On June 10, 2014, DHS issued a CY-49 reflecting: "There is a change in the status of this report from Indicated to Founded because [J.C.] was convicted in criminal court for charges that were filed as a result of the same factual circumstances reported on the CY-48." Supp.C.R. at 56-57; *see also* DHS Br. App. A-2 – A-22.

On July 7, 2014, J.C. filed a document with BHA entitled "Motion for Unfounded by Operation of Law: 55 Pa. Code § 3490.69."[16] In the Motion, J.C. requested to have all of the founded reports expunged from the ChildLine Registry on the basis that DHS failed to issue the CY-48 within 60 days of receipt of the ChildLine Registry report and failed to answer the Rule to Show Cause.

By July 25, 2014 letter, DPW notified J.C. that it received proof of a court finding of abuse and that his report status was changed from indicated to founded. The letter informed J.C. that he could appeal from the finding within 45 days if he believed the court did not identify him as the perpetrator, or **if his criminal conviction "was not about the same facts as this report[.]**" Supp.C.R. at 55 (emphasis added); *see also* DHS Br. App. A-23.

On July 31, 2014, J.C. sent BHA a Motion Requesting an Appeal in which he stated that the May 27, 2014 hearing did not take place, and that DHS was playing games. Supp.C.R. at 61. In the Motion, J.C. also claimed that he was falsely accused and convicted of the girls' physical and sexual abuse. Moreover, J.C.

---

[16] In accordance with Section 6337(b) of the Law (requiring report expungement if report is not timely designated founded, indicated or unfounded), Section 3490.69 of DPW's Regulations states: "When the CY-48 form is not filed with ChildLine within 60-calendar days of receipt of the report by ChildLine, the report shall be unfounded." 55 Pa. Code § 3490.69. However, this Court has interpreted this provision to mean that a report is deemed unfounded only when a county agency fails to file the report as founded, indicated or unfounded within the 60-day deadline. *J.C. v. Dep't of Pub. Welfare*, 980 A.2d 743 (Pa. Cmwlth. 2009); *see also K.B. v. Dep't of Pub. Welfare* (Pa. Cmwlth. No. 964 C.D. 2014, filed December 5, 2014). Moreover, there is no deadline for filing a supplemental report. *Id.*; *see also* 55 Pa. Code § 3490.67(d). Here, because DHS issued CY-48s of indicated abuse within 30 days of abuse reports, Section 3490.69 of DPW's Regulations cannot serve as a basis for DPW to expunge the subject reports.

asserted that the November 21, 2012 letter was his first notice that his name was listed on the ChildLine Registry.[17] He further pled:

> [J.C.] can prove his 'Prima Facie' case against [DHS] and all State Officials and the Commonwealth, that the allegations that [were] brought against [J.C.] [were] fabricated and alter[ed] evidence and perjur[ed] testimony and if [J.C.] which he did that [sic] there was a[n] actual case and controversy existing at all stages of Judicial and administrative process, [J.C] is not collateral[ly] estop[ped] from this Court hearing the above caption matter, [J.C.] ask[s] that these appeals be expunge[d] and a[n] order be sent to the State Courts informing them of your findings.

Supp.C.R. at 68.

> On August 26, 2014, BHA issued its order stating, in relevant part:

> AND NOW, having received documentary evidence demonstrating that **[J.C.] was convicted** of Aggravated Assault . . . and Endangering the Welfare of a Child . . . on May 20, 2005 **based on the same factual circumstances and subject child referenced in the above-captioned founded report**, and after [J.C.] having been afforded an opportunity to demonstrate that said [conviction] was not related to the above-captioned allegation of child abuse or that the outcome should not result in dismissal of this matter on the basis of collateral estoppel, the above-captioned appeal is hereby DISMISSED in accordance with 23 Pa.[]C.S.[] § 6303 as the report is founded.

C.R. Item 4 at 1; *see also* DHS Br. App. A-24 (emphasis added). On September 8, 2014, J.C. sought reconsideration, which DPW denied on September 18, 2014. C.R. Items 5, 6; *see also* DHS Br. App. A-24 – A-28. J.C. appealed to this Court.[18]

---

[17] As discussed *supra* in footnote 9, the December 2, 2003 notice was mailed to J.C. at a Philadelphia street address. *See* C.R. Item 2 at 6; *see also* DHS Br. App. A-5. It is not clear in this record precisely when J.C. was taken into custody. J.C. did not request review or a hearing in 2003. If J.C. was incarcerated by the time the notice was issued, it is possible that he did not receive the December 2, 2003 notice.

[18] Commonwealth Court Docket Nos. 1698 C.D. 2014 (BHA No. 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 for Aly. B. Report No. 51-134159), 1944 C.D. 2014 (BHA No. 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 for Pr. B. Report No. 51-134160),

Five of the six questions J.C. presented in his brief and the entire argument section of his brief question and relate to J.C.'s contention that he was maliciously prosecuted and that his constitutional rights were violated relative to his underlying criminal case. *See* J.C. Br. at 17, 21-47. He does not deny that the founded reports are based upon the exact crimes for which he was convicted, but rather claims that his criminal convictions were based on perjury and falsified records obtained by corrupt DHS and state officials. J.C. claims that his founded reports should be expunged from the ChildLine Registry because he was innocent of the criminal charges underlying the convictions upon which the reports were based. He also argues that he "is not Collateral[ly] estop[ped] from [this Court] hearing this case because there is a[n] actual case and controversy that exists at both stages Judicial and Administrative which both investigations [were] done together." J.C. Br. at 46. We disagree.

> In *J.G.* [*v. Department of Public Welfare*, 795 A.2d 1089 (Pa. Cmwlth. 2002)], this Court explained that **there is no statutory provision within the Law providing perpetrators named in a founded report of child abuse the ability to appeal a denial of an expunction request.** [*Id.*] at 1092. Nevertheless, we explained that a founded report of child abuse constitutes an 'adjudication' under the Administrative Agency Law (AAL),[FN9] and that pursuant to the AAL, '[n]o adjudication of a Commonwealth agency shall be valid as to any party unless he shall have been

1945 C.D. 2014 (BHA No. 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 for Po. B. Report No. 51-135155), 1946 C.D. 2014 (BHA No. 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 for Ale. B. Report No. 51-134156), 1947 C.D. 2014 (BHA No. 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 for Aly. B. Report No. 51-134635), 1948 C.D. 2014 (BHA No. 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 for Ale. B. Report No. 51-134636), and 1949 C.D. 2014 (BHA No. 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 for Pr. B. Report No. 51-134637). On November 25, 2014, this Court consolidated J.C.'s appeals.

On January 6, 2015, this Court granted DHS' motion to intervene. On March 3, 2015, DPW certified that it agrees with DHS' position, and that it will not participate in the appeals.

Our review of an order dismissing an appeal of a request to have a founded report expunged is limited to determining whether substantial evidence supports necessary findings of fact, constitutional rights were violated or errors of law were committed. *J.M. v. Dep't of Pub. Welfare*, 94 A.3d 1095 (Pa. Cmwlth. 2014).

10

afforded reasonable notice of a hearing and an opportunity to be heard.' *Id.* (quoting 2 Pa.C.S. § 504). We further explained:

> A founded report of child abuse constitutes an 'adjudication' as it is a final determination which that [sic] affects a named perpetrator's personal rights by branding him or her as a child abuser in a Statewide central register of child abuse. A report is deemed 'founded' if there has been any judicial adjudication based upon a 'finding that a child who is a subject of the report has been abused.' . . . These adjudications encompass not only a judicial finding that the child has been abused, but that the perpetrator has been found guilty of abuse in a criminal proceeding. **Where a founded report is based upon such an adjudication, an appeal would, in most instances, constitute a collateral attack of the adjudication itself, which is not allowed.**
>
> . . . .

*Id.* at 1092-93.

> FN9. 2 Pa.C.S. §§ 501-508, 701-704.

*J.M. v. Dep't of Pub. Welfare*, 94 A.3d 1095, 1099 (Pa. Cmwlth. 2014) (emphasis added); *see also J.G.*

> Collateral estoppel acts to foreclose litigation in a subsequent action where issues of law or fact were litigated and necessary to a previous judgment.
>
> Applicable here, collateral estoppel bars a subsequent lawsuit where (1) an issue decided in a prior action is identical to one presented in a later action; (2) the prior action resulted in a final judgment on the merits; (3) the party against whom collateral estoppel is asserted was a party to the prior action, or is in privity with a party to the prior action; and (4), the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior action.

11

*C.J. v. Dep't of Pub. Welfare*, 960 A.2d 494, 499 (Pa. Cmwlth. 2008) (citation omitted).

Because J.C. was afforded a full and fair counseled opportunity to be heard in his criminal action regarding the same abuse charges that formed the basis for the founded reports, his expungement request must be barred as an impermissible collateral attack of his underlying criminal convictions. Accordingly, BHA did not err in denying J.C.'s expungement request without a hearing and properly dismissed his appeals.

Based on the foregoing, BHA's order is affirmed.

_____
ANNE E. COVEY, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

J.C.,                         :   **SEALED CASE**

          Petitioner     :

                          :

       v.                    :

                          :

Department of Public Welfare,   :   No. 1698 C.D. 2014

         Respondent   :

 

J.C.,                         :

          Petitioner     :

                          :

       v.                    :

                          :

Department of Public Welfare,   :   No. 1944 C.D. 2014

         Respondent   :

 

J.C.,                         :

          Petitioner     :

                          :

       v.                    :

                          :

Department of Public Welfare,   :   No. 1945 C.D. 2014

         Respondent   :

 

J.C.,                         :

          Petitioner     :

                          :

       v.                    :

                          :

Department of Public Welfare,   :   No. 1946 C.D. 2014

         Respondent   :

 

J.C.,                         :

          Petitioner     :

                          :

       v.                    :

                          :

Department of Public Welfare,   :   No. 1947 C.D. 2014

         Respondent   :

J.C.,                              :
                 Petitioner    :
                                :
              v.                    :
                                :
Department of Public Welfare,    :    No. 1948 C.D. 2014
              Respondent    :

J.C.,                              :
                 Petitioner    :
                                :
              v.                    :
                                :
Department of Public Welfare,    :    No. 1949 C.D. 2014
              Respondent    :

## O R D E R

AND NOW, this 9th day of March, 2016, the Department of Public Welfare Bureau of Hearings and Appeals' August 26, 2014 orders are affirmed.

_____
ANNE E. COVEY, Judge